1    JOYCE R. BRANDA                                    JS-6
     Acting Assistant Attorney General
2    Civil Division
     JONATHAN F. OLIN
3    Deputy Assistant Attorney General
     MICHAEL S. BLUME
4    Director, Consumer Protection Branch
     JEFFREY STEGER, Assistant Director
5    Kerala T. Cowart (California Bar No. 284519)
     kerala.t.cowart@usdoj.gov
6    United States Department of Justice
     Consumer Protection Branch, Civil Division
7    P.O. Box 386
     Washington, D.C. 20044
8    Telephone (202) 353-3881
     Facsimile (202) 514-8742
9
     Attorneys for Plaintiff
10   United States of America

11                   UNITED STATES DISTRICT COURT
               FOR THE CENTRAL DISTRICT OF CALIFORNIA
12
     ------------------------------------------------------)
13   UNITED STATES OF AMERICA            )
                                         )
14   Plaintiff,                          )
                                         )
15              v.                       )      No.
                                         )
16   L.A. STAR SEAFOOD COMPANY, INC., )
     a corporation, SIMA GOLDRING,       )      CONSENT DECREE OF
17   an individual, SAM GOLDRING,        )      PERMANENT INJUNCTION
     an individual,                      )
18                                       )
                      Defendants.        )
19   ------------------------------------------------------)

1

1    Plaintiff, the United States of America, by its undersigned attorneys, having

2    filed a Complaint for Permanent Injunction ("Complaint") against L.A. Star

3    Seafood Company, Inc., a corporation, and Sima Goldring and Sam Goldring,

4    individuals (collectively, "Defendants"), and Defendants having appeared and

5    having consented to entry of this Consent Decree of Permanent Injunction

6    ("Decree") without contest and before any testimony has been taken, and the

7    United States of America having consented to this Decree;

8    IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

9    1.    This Court has jurisdiction over the subject matter and over all parties

10   to this action.

11   2.    The Complaint states a cause of action against Defendants under the

12   Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* (the "Act").

13   3.    Defendants violate the Act, 21 U.S.C. § 331(k), by causing articles of

14   food within the meaning of 21 U.S.C. § 321(f), namely fish and fishery products,

15   to become adulterated within the meaning of 21 U.S.C. § 342(a)(4), in that they

16   have been prepared, packed, or held under insanitary conditions whereby they may

17   have become contaminated with filth or may have been rendered injurious to

18   health, while such articles are held for sale after shipment in interstate commerce.

19   4.    Defendants violate the Act, 21 U.S.C. § 331(a), by causing the

1    introduction or delivery for introduction into interstate commerce of articles of

2    food, within the meaning of 21 U.S.C. § 321(f), namely fish and fishery products,

3    that are adulterated within the meaning of 21 U.S.C. § 342(a)(4), in that they have

4    been prepared, packed, or held under insanitary conditions whereby they may have

5    become contaminated with filth or may have been rendered injurious to health.

6        5.    For the purposes of this Decree, the term "eviscerate" means to

7    carefully and completely remove all internal organs, including gonads, in the body

8    cavity of the fish, without puncturing or cutting them; "salt-cured" or "pickled"

9    means preserved by any method using salt; "dried" means preserved by any

10   method used to lower the amount of moisture in the fish; and "smoked" means

11   preserved by treating the fish with salt and subjecting it to the direct action of

12   smoke from burning wood, sawdust, or similar material and/or imparting to it the

13   flavor of smoke by a means such as immersing it in a solution of wood smoke.

14       6.    Defendants and each and all of their officers, agents, employees,

15   representatives, successors, assigns, attorneys, and any and all persons in active

16   concert or participation with any of them (including individuals, directors,

17   corporations, subsidiaries, affiliates, and partnerships) who have received actual

18   notice of this Decree by personal service or otherwise are hereby permanently

19   restrained and enjoined, under the provisions of 21 U.S.C. § 332(a) and the

3

1  equitable authority of this Court, from directly or indirectly importing, receiving,

2  preparing, processing, packing, labeling, holding, and/or distributing articles of

3  food, at or from their facility located at 609 East 4th Street, Los Angeles,

4  California ("the facility"), and/or any other location(s) at or from which

5  Defendants, now or in the future, import, receive, prepare, process, pack, label,

6  hold, and/or distribute articles of food, unless and until:

7          (A)    Defendants retain, at their expense, an independent laboratory

8  (the "Laboratory") having no personal or financial ties (other than the retention

9  agreement) to Defendants or their families, and that is qualified to analyze product

10  and environmental samples collected at the facility for the presence of *Listeria*

11  *monocytogenes* ("*L. mono*") and for water phase salt levels in fish and/or fishery

12  products, in a manner that is acceptable to the United States Food and Drug

13  Administration ("FDA").  Defendants shall notify FDA in writing immediately

14  upon retaining the Laboratory and shall provide FDA a copy of the service

15  contract.  Such service contract shall contain provisions, acceptable to FDA, for

16  environmental and finished product sample analyses;

17          (B)    Defendants retain, at their expense, an independent expert or

18  experts (the "Expert(s)") having no personal or financial ties (other than the

19  retention agreement) to Defendants or their families, and who, by reason of

4

background, education, training, and experience, is qualified to:

    (1) Conduct hazard analyses to develop adequate Hazard Analysis Critical Control Point ("HACCP") plans for Defendants' fish and fishery products, as required by 21 C.F.R. § 123.6(a) through (c);

    (2) Verify and ensure the adequacy of Defendants' HACCP plans, including but not limited to: (i) conducting scientific validation studies regarding the adequacy of the critical limits listed in Defendants' HACCP plans for all fish that are not eviscerated at the time of receipt; and (ii) ensuring that large fish (*i.e.*, those more than five (5) inches in length) used in producing smoked, dried, or salt-cured (pickled) finished products are eviscerated before being salted or submerged in a salt solution;

    (3) Develop procedures for processing Defendants' fish and fishery products to achieve water phase salt levels that adequately control *Clostridium botulinum* ("*C. bot.*") for all of Defendants' fish and fishery products;

    (4) Develop adequate written Sanitation Standard Operating Procedures ("SSOPs") in accordance with paragraph (C)(5) below;

    (5) Develop a Listeria Monitoring Program in accordance with paragraph (C)(6) below;

    (6) Collect product and environmental samples from within

1   the facility for water phase salt level testing and for pathogen testing in accordance

2   with paragraph (C) below;

3            (7)     Develop adequate written verification procedures to

4   ensure that the fish and fishery products that Defendants offer for import into the

5   United States were processed in accordance with the requirements of 21 C.F.R.

6   Part 123;

7            (8)     Evaluate Defendants' compliance with the current good

8   manufacturing practice ("cGMP") requirements for food, as required by 21 C.F.R.

9   Part 110;

10           (9)     Develop and conduct employee training programs (in

11  English and any other language necessary to convey the substance of the training)

12  on the SSOPs, seafood HACCP and cGMP requirements, and Listeria Monitoring

13  Program; and

14           (10)    Inspect the facility and determine whether the methods,

15  facilities, and controls are operated and administered in conformity with the Act,

16  its implementing regulations, and this Decree;

17       Defendants shall notify FDA in writing of the name(s) and qualifications of

18  the Expert(s) under paragraph (B) as soon as they retain such Expert(s).

19           (C)     After reviewing all FDA inspectional observations of

deficiencies from May 2013 to the present, and after consultation with the

Laboratory, Defendants' Expert(s), in conjunction with Defendants:

(1)     Conducts hazard analyses and develops, to FDA's

satisfaction, an adequate written HACCP plan, as required by 21 C.F.R. Part 123,

for each type of fish and/or fishery product imported, received, prepared,

processed, packed, labeled, held, and/or distributed by Defendants, that at a

minimum:

(a)     ensures that large fish (more than five (5) inches in

length) used in Defendants' production of smoked, dried, or salt-cured (pickled)

finished products are eviscerated before being salted or submerged in a salt

solution (e.g., thawing);

(b)     ensures that each brining tank of in-process fish or

fishery products is prepared and monitored in such a manner that the fish contained

therein have adequate, uniform, and consistent water phase salt levels at this

processing step; and

(c)     effectively controls food safety hazards, including

but not limited to:  (i) those associated with *C. bot.* growth and toxin formation

likely to occur in smoked, dried, or salt-cured (pickled) fish and fishery products

under normal and moderate temperature abuse conditions; and (ii) those associated

1   with scombrotoxin (histamine) formation;

2       (2)    Develops and conducts, to FDA's satisfaction, scientific

3   validation studies regarding the adequacy of the critical limits listed in Defendants'

4   HACCP plans for fish that are not eviscerated prior to receipt by Defendants and,

5   based on the results of such validation studies, revises the HACCP plans

6   accordingly;

7       (3)    Develops, to FDA's satisfaction, written corrective action

8   plans as part of Defendants' HACCP plans to be taken whenever there is a

9   deviation from a critical limit, as described in 21 C.F.R. § 123.7(b);

10       (4)    Develops, to FDA's satisfaction, written verification

11   procedures as part of Defendants' HACCP plans, as described in 21 C.F.R. §

12   123.8;

13       (5)    Develops, to FDA's satisfaction, written SSOPs specific

14   to the facility and operations and that shall conform with the procedures set forth at

15   21 C.F.R.

16   § 123.11(a) through (d), and ensures, to FDA's satisfaction, that Defendants'

17   operations comply with the Act and 21 C.F.R. Part 110;

18       (6)    Develops and implements, to FDA's satisfaction, a

19   written Listeria Monitoring Program that shall include, at a minimum, the

8

1  following:

2      (a) an effective written sanitation control program that

3  establishes adequate methods, facilities, and controls for importing, receiving,

4  preparing, processing, packing, labeling, holding, and distributing articles of food

5  to minimize the risk of introducing *L. mono*, other pathogenic organisms, and filth

6  into Defendants' food, and to ensure that foods are not adulterated within the

7  meaning of 21 U.S.C. § 342(a);

8      (b) an effective program for environmental monitoring

9  and testing of the facility to ensure that pathogenic organisms such as *Listeria*

10  species ("*L. spp.*") are systemically controlled and that *L. mono* does not occur in

11  finished products.  Sampling shall be conducted using specified frequencies and

12  methods (e.g., including how, where, and when to sample; the number and

13  frequency of samples to be collected; and the methods of analyses) that are

14  acceptable to FDA.  Defendants shall ensure that the results of all analyses

15  conducted pursuant to paragraph (C)(6)(b) are sent to FDA within two (2) calendar

16  days after receipt by Defendants; and

17      (c) an adequate written plan for remedial action that

18  Defendants shall implement should *L. spp.*, *L. mono*, or any other pathogenic

19  organism be detected.  The remedial action plan shall include intensified sanitation

1    and intensified sampling measures that are acceptable to FDA.

2          (7)    Develops and implements, to FDA's satisfaction, written

3    verification procedures to ensure that the fish and fishery products that Defendants

4    offer for import into the United States were processed in accordance with the

5    requirements of 21 C.F.R. Part 123;

6          (8)    Develops and conducts, to FDA's satisfaction, employee

7    training programs (in English and any other language necessary to convey the

8    substance of the training) on the seafood HACCP and cGMP regulations, HACCP

9    plans, SSOPs, Listeria Monitoring Program, and any other control strategies

10   specific to Defendants' fish and fishery products, and documents that Defendants

11   and each of their officers, employees, and any other person(s) who performs duties

12   at the facility for Defendants have received such training; and

13         (9)    Submits to FDA the written HACCP plans and all

14   associated records (including monitoring records), validation studies, SSOPs, the

15   Listeria Monitoring Program, written verification procedures, and training

16   programs developed pursuant to paragraph (C)(1)-(8) above; and documentation

17   demonstrating that the Expert(s) has trained Defendants and each of their officers,

18   employees, and any other person(s) who performs duties at the facility for

19   Defendants, as described in paragraph (C)(8) above;

1        (D)    Defendants assign continuing responsibility for the operation of

2 the Listeria Monitoring Program discussed in paragraph (C)(6) above to a person

3 (or persons), who, by reason of background, experience, or education, is qualified

4 to maintain the facility in a sanitary condition, coordinate with the Laboratory, and

5 implement any necessary remedial action(s), and provide such person(s) with the

6 authority to achieve the necessary corrections;

7        (E)    Defendants make the Listeria Monitoring Program available

8 and accessible to all their officers, employees, and any other person(s) who

9 performs duties at the facility for Defendants in English and any other language

10 necessary to convey the substance of such program;

11        (F)    FDA has approved, in writing, the seafood HACCP plans,

12 validation studies, SSOPs, Listeria Monitoring Program, written verification

13 procedures, and training programs and documentation developed by the Expert(s),

14 as specified in paragraphs 6(C)(1)-(8) above;

15        (G)    Defendants successfully complete the training program

16 approved by FDA pursuant to paragraph (F) above;

17        (H)    Defendants, at their expense, clean and sanitize the facility and

18 equipment therein and make improvements, thereby rendering the facility and

19 equipment suitable for importing, receiving, preparing, processing, packing,

1   holding, labeling, and distributing articles of food in accordance with this Decree,

2   the Act, and all applicable regulations, and Defendants ensure that the facility and

3   equipment therein will be continuously maintained in a sanitary condition;

4         (I)    The Expert(s) conducts a comprehensive inspection of the

5   facility and the methods and controls used to import, receive, prepare, process,

6   pack, label, hold, and distribute foods to determine whether Defendants are

7   operating in compliance with this Decree, the Act, and all applicable regulations.

8   The Expert(s) shall verify, with supporting documentation, that:  (i) Defendants

9   have corrected all of the seafood HACCP and cGMP deficiencies observed by

10  FDA since May 2013, specifying each FDA observation and Defendants'

11  corrections thereof;

12  (ii) the monitoring equipment used to implement Defendants' HACCP plans is

13  suitable and performing adequately; and (iii) the facility and the methods and

14  controls used to import, receive, prepare, process, pack, label, hold, and distribute

15  foods are, in the Expert's opinion, in compliance with this Decree, the Act, and its

16  implementing regulations.  The Expert(s) shall submit, in writing, all findings and

17  supporting documentation to Defendants and FDA concurrently, within fifteen (15)

18  calendar days after completion of the inspection;

19        (J)    Defendants destroy, under FDA's supervision, and according to

1   a destruction plan submitted in writing by Defendants and approved in writing by

2   FDA prior to implementation, all in-process and finished fish and fishery products,

3   including, but not limited to, all smoked, dried, and salt-cured (pickled) fish or

4   fishery products, in their custody, control, or possession at the time this Decree is

5   signed by the parties;

6        (K)   FDA, as it deems necessary to evaluate Defendants' compliance

7   with the terms of this Decree, the Act, and its implementing regulations, conducts

8   inspections of the facility, including Defendants' buildings, sanitation-related

9   systems, equipment, utensils, articles of food, and all relevant records;

10        (L)   Defendants have paid all costs of inspection, analyses, review,

11   investigations, examination, and supervision for FDA's oversight with respect to

12   paragraphs 6(A) through (K), at the rates set forth in paragraph 14 below; and

13        (M)   FDA has notified Defendants in writing that Defendants appear

14   to be in compliance with the requirements set forth in paragraphs 6(A) through (L)

15   of this Decree, the Act, and its implementing regulations.  In no circumstances

16   shall FDA's silence be construed as a substitute for written notification.

17       7.   After receiving notice from FDA pursuant to paragraph 6(M),

18   Defendants shall not import, receive, prepare, process, pack, hold, label, or

19   distribute any fish or fishery product not identified in a written HACCP plan

13

1  approved by FDA pursuant to paragraph 6(F) until Defendants submit for FDA's

2  review a written HACCP plan for such fish or fishery product and receive FDA's

3  written approval.  In no circumstances shall FDA's silence be construed as a

4  substitute for written approval.

5      8.    Immediately upon resuming operations after completing the

6  requirements of paragraph 6, Defendants shall, in consultation with the Expert(s),

7  continuously implement the written HACCP plans, SSOPs, Listeria Monitoring

8  Program, and written verification procedures approved by FDA pursuant to

9  paragraph 6(F).  Defendants further shall comply with the following requirements:

10      (A)    Defendants shall conduct finished product testing for water

11  phase salt level in the following manner:

12          (1)    Defendants shall have tested a randomly collected,

13  representative sample from every lot of finished fish or fishery products that they

14  process for the first fifteen (15) consecutive production days, and all such samples

15  shall have a water phase salt level that adheres to the critical limits set forth in the

16  HACCP plans approved by FDA pursuant to paragraph 6(F);

17          (2)    After satisfying the requirements of paragraph 8(A)(1),

18  Defendants shall have tested a randomly collected, representative sample from one

19  lot of each type of finished fish or fishery products that they process each week for

1   the next three (3) months;

2   (3)   After satisfying the requirements of paragraph 8(A)(2),

3   Defendants shall have tested a randomly collected, representative sample from one

4   lot of each type of finished fish or fishery products they process each month for the

5   next twelve (12) months; and

6   (4)   After satisfying the requirements of paragraph 8(A)(3),

7   Defendants shall have tested a randomly collected, representative sample from one

8   lot of each type of finished fish or fishery products they process every three (3)

9   months thereafter.

10   Defendants shall send copies of the results of tests conducted pursuant to

11   paragraph 8(A) to FDA within two (2) calendar days after receipt by Defendants.

12   If any sample analysis conducted pursuant to paragraph (A) shows a water phase

13   salt level that does not adhere to the critical limits set forth in the HACCP plans

14   approved by FDA pursuant to paragraph 6(F) or 7, Defendants shall immediately

15   destroy the affected lot(s) at Defendants' expense, under FDA's supervision, and

16   pursuant to a destruction plan approved in writing by FDA.  Defendants further

17   shall reassess their processing operations to determine the cause of the deviation,

18   correct the deviation, revise their HACCP plan(s) accordingly, and submit such

19   revisions for FDA's written approval.  After correcting the cause of the deviation,

1    Defendants shall reinstate the complete sequence of testing under paragraph 8(A)

2    anew; and

3              (B)      Defendants shall conduct finished-product testing for *L. mono*

4    in the following manner:

5                    (1)      Defendants shall have tested for *L. mono* a randomly

6    collected, representative sample from every lot of fish or fishery products that they

7    process for the first fifteen (15) consecutive production days;

8                    (2)      After the completion of testing under paragraph 8(B)(1),

9    Defendants shall have tested a randomly collected, representative sample from one

10   lot of each type of finished fish or fishery products that they process each week for

11   the next three (3) months;

12                    (3)      After the completion of testing under paragraph 8(B)(2),

13   Defendants shall have tested a randomly collected, representative sample from at

14   least one lot of each type of finished fish or fishery products that they process each

15   month for the next twelve (12) months; and

16                    (4)      After completing the testing under paragraph 8(B)(3),

17   Defendants shall have tested a randomly collected, representative sample from at

18   least one lot of each type of finished fish or fishery products that they process

19   every three (3) months thereafter.

1    Defendants may use the same fish or fishery products that they sampled for

2  water phase salt level testing in accordance with paragraph 8(A) for the purpose of

3  *L. mono* testing pursuant to paragraph 8(B).  Defendants shall send copies of the

4  results of all testing conducted pursuant to paragraph 8(B) to FDA within two (2)

5  calendar days after receipt by Defendants.  If any laboratory test completed

6  pursuant to paragraph (B) shows the presence of *L. mono* in any article of food,

7  then Defendants must immediately cease production and notify FDA that

8  production has ceased.  Defendants shall also destroy, at Defendants' expense,

9  under FDA's supervision, and according to a destruction plan submitted to and

10  approved by FDA in writing prior to implementation, all food products

11  manufactured from the time the laboratory sample(s) testing positive for *L. mono*

12  was collected.  Defendants may resume production only when they have

13  determined and corrected the cause of the contamination and only after FDA

14  notifies Defendants in writing that Defendants appear to be in compliance with the

15  requirements of this Decree, the Act, and its implementing regulations.  After

16  correcting the cause of the contamination, Defendants shall reinstate the complete

17  sequence of testing under paragraph 8(B) anew;

18    (C)    In the event that Defendants or their Expert(s) determine that

19  the Listeria Monitoring Program that FDA approved pursuant to paragraph 6(F)

17

needs to be revised, Defendants shall provide proposed changes to FDA in writing at least twenty (20) calendar days prior to their implementation, and shall not implement their proposed changes until FDA approves those changes in writing. Any such changes shall consist of methods and controls that are shown to FDA's satisfaction to systemically control pathogenic organisms such as *L. spp.* and ensure that *L. mono* does not occur in finished products.

9.  If, after notifying FDA of the name of the laboratory retained to conduct sample collection and analyses pursuant to paragraph 6(A), Defendants terminate or in any way alter their service contract with the laboratory, Defendants shall notify FDA within seven (7) calendar days.  If Defendants terminate their service contract, Defendants shall provide a copy of the service contract with the new laboratory to FDA within five (5) business days after execution.

10.  Within thirty (30) calendar days after Defendants resume their operations after completing the requirements of paragraph 6 and receiving the notice set forth in paragraph 6(M), the Expert(s) shall conduct a comprehensive inspection of the facility, and any other location(s) at or from which Defendants import, receive, prepare, process, pack, label, hold, or distribute articles of food, and the methods and controls used to import, receive, prepare, process, pack, label, hold, and distribute foods to determine whether Defendants are operating in

1   compliance with this Decree, the Act, and all applicable regulations.  The Expert(s)

2   shall submit a report documenting all findings to Defendants and FDA

3   concurrently, within ten (10) calendar days after completing the inspection.

4   Thereafter, the Expert(s) shall conduct one inspection every three (3) months for

5   one year, and then one inspection every six (6) months for the next two (2) years.

6   Beginning in the fourth year after Defendants resume their operations after

7   completing the requirements of paragraph 6, the Expert(s) shall conduct

8   inspections annually unless FDA informs Defendants in writing that more frequent

9   expert inspections and reporting are required.  During each inspection conducted

10  by the Expert(s), the Expert(s) shall verify that the facility and the methods and

11  controls Defendants use to import, receive, prepare, process, pack, label, hold, and

12  distribute articles of food are in compliance with the requirements of this Decree,

13  the Act, and all applicable regulations, and shall certify compliance in the Expert's

14  report.

15      11.    Defendants and each and all of their officers, agents, employees,

16  representatives, successors, assigns, attorneys, and any and all persons in active

17  concert or participation with any of them (including individuals, directors,

18  corporations, subsidiaries, affiliates, and partnerships) who receive actual notice of

19  this Decree, are permanently restrained and enjoined under the provisions of 21

U.S.C. § 332(a) from directly or indirectly doing or causing any act that:

        (A)     Violates the Act, 21 U.S.C. § 331(k), by causing any article of food within the meaning of 21 U.S.C. § 321(f) to become adulterated within the meaning of 21 U.S.C.

§ 342(a)(4) while such article is held for sale after shipment of one or more of its components in interstate commerce;

        (B)     Violates the Act, 21 U.S.C. § 331(a), by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce, any article of food within the meaning of 21 U.S.C. § 321(f) that is adulterated within the meaning of 21 U.S.C. § 342(a)(4); and/or

        (C)     Results in the failure to implement and continuously maintain the requirements of this Decree.

    12.    FDA shall be permitted, without prior notice and as and when FDA deems necessary, to make inspections of the facility, and any other location(s) at or from which Defendants import, receive, prepare, process, pack, label, hold, or distribute articles of food, without prior notice, to take any other measures necessary to monitor and ensure continuing compliance with the terms of this Decree, the Act, and its implementing regulations.  During the inspections, FDA

shall be permitted to have immediate access to buildings and the contents therein,

including equipment, raw ingredients, in-process and finished articles of food,

containers, and packaging material; to take photographs and make video

recordings; to take samples of Defendants' raw ingredients, in-process and finished

articles of food, containers, and packaging material; and to examine and copy all

records related to importing, receiving, preparing, processing, packing, holding,

labeling, and distributing any and all articles of food.  The inspections shall be

permitted upon presentation of a copy of this Decree and appropriate credentials.

The inspection authority granted by this Decree is apart from, and in addition to,

the authority to make inspections under the Act, 21 U.S.C. § 374.

13.     Defendants shall notify FDA in writing at least fifteen (15) calendar

days before any change in ownership, name or character of their business,

including reorganization, relocation, dissolution, assignment, or lease or sale of the

business or any assets of the business, such as buildings, equipment, or inventory,

that may affect compliance with the obligations arising from this Decree.

Defendants shall provide any prospective successor or assign with a copy of this

Decree at least ten (10) calendar days before the assignment or change in business,

and shall provide FDA with an affidavit of compliance with this paragraph within

ten (10) calendar days after providing a copy of this Decree to a prospective

1    successor or assign.

2        14.    Defendants shall pay all costs of FDA's supervision, inspections,

3    investigations, analyses, examinations, sampling, testing, and reviews that FDA

4    deems necessary to evaluate Defendants' compliance with this Decree, at the

5    standard rates prevailing at the time costs are incurred, and Defendants shall make

6    payment in full to FDA within (30) calendar days after receiving written

7    notification from FDA of the costs.  As of the date that this Decree is signed by the

8    parties, these rates are:  $88.45 per hour and fraction thereof per representative for

9    inspection work; $106.03 per hour or fraction thereof per representative for

10   analytical or review work; $0.56 per mile for travel by automobile; government

11   rate or the equivalent for travel by air or other means; and the published

12   government per diem rate or the equivalent for the areas in which the inspections

13   are performed per representative and per day for subsistence expenses, where

14   necessary.  In the event that the standard rates applicable to FDA supervision of

15   court-ordered compliance are modified, these rates shall be increased or decreased

16   without further order of the Court.

17       15.    If, at any time after entry of this Decree, FDA determines, based on

18   the results of an inspection, analysis of a sample, report submitted by the Expert(s),

19   or other information, that Defendants have failed to comply with any provision of

1   this Decree, have violated the Act or its implementing regulations, or that

2   additional corrective actions are necessary to achieve compliance with this Decree,

3   the Act, or its implementing regulations, FDA may, as and when it deems

4   necessary, order Defendants in writing to take appropriate action, including, but

5   not limited to, ordering Defendants to immediately take one or more of the

6   following actions:

7          (A)    Cease importing, receiving, preparing, processing, packing,

8   labeling, holding, and distributing any articles of food;

9          (B)    Recall all articles of food that have been distributed by and/or

10  are under the custody and control of Defendants' agents, distributors, customers, or

11  consumers;

12         (C)    Submit additional samples to a qualified laboratory for analysis;

13         (D)    Institute or re-implement any of the requirements set forth in

14  this Decree; and

15         (E)    Take any other corrective actions as FDA deems necessary to

16  protect the public health or bring Defendants into compliance with this Decree, the

17  Act, and its implementing regulations.

18         The provisions of this paragraph shall be separate and apart from, and in

19  addition to, all other remedies available to FDA.  Defendants shall pay all costs of

1    recalls and other corrective actions, including the costs of FDA's supervision,

2    inspections, investigations, analyses, examinations, review, travel, and subsistence

3    expenses to implement and monitor recalls and other actions, at the rates specified

4    in paragraph 14 of this Decree.

5        16.    Upon receipt of any order issued by FDA pursuant to paragraph 15,

6    Defendants shall immediately and fully comply with the terms of the order.  Any

7    cessation of operations or other action as described in paragraph 15 shall be

8    implemented immediately upon notice from FDA and shall continue until

9    Defendants receive written notification from FDA that Defendants appear to be in

10   compliance with the Decree, the Act, and its implementing regulations, and that

11   Defendants may resume operations.  After a cessation of operations, and while

12   determining whether Defendants appear to be in compliance with this Decree, the

13   Act, and its implementing regulations, FDA may require Defendants to re-institute

14   or re-implement any of the requirements of this Decree.

15       17.    Defendants shall promptly provide any information or records to FDA

16   upon request regarding the importing, receiving, preparing, processing, packing,

17   labeling, holding, and/or distributing of articles of food.  Defendants shall maintain

18   copies of their HACCP plans, along with copies of all records required by such

19   plans, 21 C.F.R. Part 123, or this Decree, at the facility, and any other location(s)

at or from which Defendants, import, receive, prepare, process, pack, label, hold, and/or distribute articles of food, in a location where such records are readily available for reference and inspection by FDA.  Defendants shall retain all records referred to in this paragraph for at least three (3) years after the date the records are prepared.

18.     If any Defendant fails to comply with any of the provisions of the Act, its implementing regulations, and/or this Decree, Defendants shall pay to the United States of America liquidated damages in the sum of one thousand five hundred dollars ($1,500) for each day that such violation continues; an additional sum of one thousand dollars ($1,000) in liquidated damages per day for each violation of the Act, its implementing regulations, and/or this Decree (e.g., if two violations occur for two days, the liquidated damages shall be $7,000); and an additional sum equal to twice the retail value of each shipment of food that is adulterated or otherwise in violation of the Act, its implementing regulations, or this Decree.  Defendants understand and agree that the liquidated damages specified in this paragraph are not punitive in nature and their imposition does not in any way limit the ability of the United States to seek, and the Court to impose, additional civil or criminal penalties based on the conduct that may also be the basis for payment of liquidated damages pursuant to this paragraph.

19.     Should the United States bring and prevail in a contempt action to

enforce the terms of this Decree, then Defendants shall, in addition to other

remedies, reimburse the United States for its attorneys' fees (including overhead),

travel expenses incurred by attorneys and witnesses, expert witness fees,

administrative and court costs, investigation and analytical

expenses incurred in bringing the contempt action, and any other costs or fees

related to the contempt proceedings.

20.     Defendants shall abide by the decisions of FDA, and FDA's decisions

shall be final.  All decisions conferred upon FDA in this Decree shall be vested in

FDA's discretion and, if contested, shall be reviewed by this Court under the

arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A).  Review by the

Court of any FDA decision rendered pursuant to this Decree shall be based

exclusively on the written record before FDA at the time of the decision. No

discovery shall be taken by either party.

21.     Within ten (10) calendar days after entry of this Decree, Defendants

shall provide a copy of this Decree by personal service or certified mail (return

receipt requested) to each and all of their officers, agents, employees,

representatives, successors, assigns, attorneys, and any and all persons in active

concert or participation with any of them (including individuals, directors,

corporations, subsidiaries, affiliates, and partnerships).  Within thirty (30) calendar days after entry of this Decree, Defendants shall provide to FDA an affidavit of compliance with this paragraph stating the fact and manner of compliance and identifying the names and positions of all persons so notified and attaching copies of the executed certified mail return receipts.

22.     Within ten (10) calendar days after entry of this Decree, Defendants shall prominently post a copy of this Decree (in English and any other language necessary to convey the substance of the Decree) in an employee common area at the facility and any other location(s) at or from which Defendants, now or in the future, import, receive, prepare, process, pack, label, hold, and/or distribute articles of food, and shall ensure that the Decree remains posted for as long as the Decree remains in effect.  Within thirty (30) calendar days after entry of this Decree, Defendants shall provide to FDA an affidavit of compliance with this paragraph stating the fact and manner of compliance and identifying all locations the Decree is posted.

23.     Within ten (10) calendar days after entry of this Decree, Defendants shall hold a general meeting or a series of smaller meetings for all employees, at which they shall describe the terms and obligations of this Decree (in English and any other language necessary to convey the substance of the Decree).  Defendants

1  shall provide to FDA within thirty (30) calendar days after entry of this Decree, an

2  affidavit of compliance with this paragraph stating the fact and manner of

3  compliance and identifying the names and positions of all meeting attendees and

4  attaching a copy of the meeting sign-in sheet(s).

5      24.    In the event that any Defendant becomes associated with any

6  additional officers, agents, employees, representatives, successors, assigns,

7  attorneys, or any additional persons in active concert or participation with any of

8  them (including individuals, directors, corporations, subsidiaries, affiliates, and

9  partnerships) at any time after entry of this Decree, Defendants shall immediately

10  provide a copy of this Decree, by personal service or certified mail (return receipt

11  requested), to such persons.  Within ten (10) calendar days after each instance that

12  any Defendant becomes associated with any such person, Defendants shall provide

13  to FDA an affidavit stating the fact and manner of Defendants' compliance with

14  this paragraph, identifying the names, addresses, and positions of all persons who

15  received a copy of this Decree pursuant to this paragraph, and attaching a copy of

16  the executed certified mail return receipts.

17      25.    Defendants shall address all communications required under this

18  Decree to the Director, Los Angeles District Office, Food and Drug

19  Administration, 19701 Fairchild, Irvine, CA 92612, shall reference this civil action

1    by case name and civil action number, and shall prominently mark "Decree

2    Correspondence" in such communication.

3          26.    This Court retains jurisdiction of this action and the parties hereto for

4    the purpose of enforcing and modifying this Decree and for the purpose of granting

5    such additional relief as may be necessary or appropriate.

6          SO ORDERED:

7          Dated this  26th day of March, 2015.

8

9    _____

10         UNITED STATES DISTRICT JUDGE

11

1    The undersigned hereby consent to entry of the foregoing Decree.

2    **FOR PLAINTIFF:**

3    JOYCE R. BRANDA
     Acting Assistant Attorney General
4    Civil Division

5    JONATHAN F. OLIN
     Deputy Assistant Attorney General
6
     MICHAEL S. BLUME
7    Director
8    Consumer Protection Branch

9    JEFFREY STEGER
     Assistant Director
10
     _____
11   Kerala T. Cowart
     Trial Attorney, California Bar # 284519
12   United States Department of Justice
     Consumer Protection Branch
13   Civil Division
     P.O. Box 386
14   Washington, DC 20044
     Tel. (202) 353-3881
     Fax (202) 514-8742
15   Kerala.t.cowart@usdoj.gov

16
     OF COUNSEL
17
     WILLIAM B. SCHULTZ
18   General Counsel
     United States Department of Health and
19   Human Services

1  ELIZABETH H. DICKINSON
   Chief Counsel
2  Food and Drug Division

3  PERHAM GORJI
   Deputy Chief Counsel, Litigation
4  Food and Drug Division

5

6  MELISSA J. MENDOZA
   Associate Chief Counsel for Enforcement
7  Food and Drug Division
   10903 New Hampshire Avenue
8  Silver Spring, MD 20993-0002
   (301) 796-8707

9

**FOR DEFENDANTS:**

1

2  _____
   Sima Goldring
3  Individually and as President and
   co-owner of L.A. Star Seafood Company, Inc.

4

   _____
5  Sam Goldring
   Individually and as Production Manager and
6  co-owner of L.A. Star Seafood Company, Inc.

7  _____
   Arkady A. Tselner
8  Attorney for L.A. Star Seafood Company, Inc.,
   Sima Goldring, and Sam Goldring